STRANCH, Circuit Judge,
dissenting.
I write separately to address the factual issue that underlies our legal ruling— whether Ronnie Bowling was still “in custody” on his Rockcastle County conviction at the time he filed his habeas petition, as required for federal jurisdiction. Because Bowling was not owed pre-trial custody credit toward his Rockcastle County sentence, nor did he receive it, I believe he was “in custody” and, therefore, respectfully dissent.
As • the majority notes, to determine whether Bowling was in custody on his Rockcastle County sentence, we must first determine to which sentence his pre-trial custody credit applies. Kentucky law and Kentucky Department of Corrections (KDOC) policies guide the inquiry regarding his pre-trial custody credit, and clarify how that credit is calculated in a factual scenario involving multiple indictments and sentences. KDOC Policy 28-01-08(II)(A)(2) states: “Where multiple felony indictments are involved, any applicable credit shall be applied to the indictment which is sentenced first.” KDOC Policy 28-01-08(II)(A)(6) states: “If an offender is being sentenced on more than one felony indictment at the same time, custody time credit shall be calculated separately for *1018 each indictment.... If those felony detain-ments overlap, one indictment shall receive credit while the other indictment shall have fewer or zero (0) days credit.” And that is what happened here: Bowling’s credit was applied to his first Laurel County sentence. The KDOC Resident Record Card confirms this, noting that Bowling was given 1,378 days of jail credit on his Laurel County burglary sentence, and no days of credit for his five other Laurel County sentences or his Rockcastle County sentence.
KRS § 532.120(3) does not conflict with the KDOC policies cited above—the policies and the statutory language are easily read together, and appear to have been created to do so. The statute uses mandatory language (“shall") to prevent defendants from being completely denied their custody credit. It does not mandate or explain how credit should be applied. KDOC policies specify exactly how the credit is awarded in different situations. This makes practical sense. The Department of Corrections regularly deals with issues of custody credit in multiple convictions, including situations in which a defendant was convicted and sentenced in different counties on different dates, as here. In light of this expertise, it is not surprising that nothing in the statute attempts to reach the level of granularity that would specify to which sentence a credit should apply and that such decision is instead entrusted to the KDOC.
This reading is consistent with the Kentucky Supreme Court’s decision in Bowling v. White, 480 S.W.3d 911, 913 (Ky. 2015). In certifying questions to the Kentucky Supreme Court, the district court assumed that Bowling was due credit for his pre-trial custody time, that the sentencing court did not give him that credit, and that the KDOC did credit Bowling with that time. (R. 88, PageID# 1487-91) (“Seven years elapsed between Ronnie Lee Bowling’s arrest and his conviction for attempted murder. Bowling spent those seven years in jail. Kentucky law requires what common sense suggests: That those seven years should be credited towards his resulting 20-year sentence. But the sentencing court did not credit Bowling with those years, and Bowling never appealed. Kentucky’s Department of Corrections, however, did credit Bowling with that time. The question presented by this case is whether the Department of Corrections can remedy the sentencing court’s error.”).
Bowling, proceeding pro se at the time, did not challenge these erroneous factual assumptions. The Kentucky Supreme Court expressly assumed the facts as presented by the district court, and left any fact finding about Bowling’s situation up to the district court. Bowling, 480 S.W.3d at 913 (“The record in this case is sparse because it concerns the certification of a question of law, and we are thus dependent on the facts as articulated by the district court at its request.”). The state Supreme Court went on to hold that the KDOC did have the power to alter a mistake, a holding Bowling does not contest. See id. In a situation where an individual was mistakenly denied credit by a trial court, the KDOC is authorized to correct the error. See id. However, this holding is not relevant to the determination facing this panel: if Bowling was actually owed credit on his Rockcastle County sentence, and if he received it.
Justice Seay’s dissent highlighted this problem.
The Rockcastle trial court correctly awarded Bowling zero days custody time credit.... This court does not have Bowling’s Rockcastle [Presentence Investigation Report], but if Probation and Parole calculated his custody time credit according to applicable statutes and poli *1019 cy, the PSI should have shown Bowling was entitled to zero days custody time credit. This is because Corrections would have already applied the entire custody time credit to the Laurel conviction, which was the “indictment which is sentenced first.”
[[Image here]]
"While the U.S. District Court found the Rockcastle court mistakenly awarded Bowling zero days custody time credit, there appears to. be no basis in the record upon which the court could base that finding. It appears more likely the Rockcastle trial court’s award of zero days was correct, based upon Corrections’ likely initial calculation and applicable statutes and policies. The U.S. District Court also found Corrections “recalculated” Bowling’s custody time credit. There also appears to be no basis in the record upon which the court could base that finding.
Id. at 918-20 (Seay, J., dissenting).
The Bowling decision does not address the issue at hand. Under Kentucky law and KDOC policies, Bowling’s credit was properly applied to his first Laurel County sentence, as reflected in the record. He was not entitled to have pre-trial jail custody credit on his Rockcastle County sentence, and neither KRS § 582.120(3) nor the Kentucky Supreme Court say otherwise.
Further, the evidence does not show that Bowling was awarded credit on his Rockcastle sentence, rather just the opposite. The majority points to a March 20, 2012 letter from a KDOC official to support the contention that the KDOC awarded Bowling pre-trial custody credit on his Rockcastle County sentence. But that letter is not a “concession” that the KDOC did not have custody over Bowling. Rather, it is premised on a hypothetical—if Bowling were “granted a new trial and [his] death sentence [was] vacated,” his sentence would be recalculated. (R 1-1, Pa-gelD# 99). Upon recalculation, the letter states, his sentence would have been considered served out and he would be released from custody. It makes sense that if Bowling’s Laurel County sentence were vacated, his pre-trial custody credit would transfer to his Rockcastle County conviction pursuant to KRS § 532.120(3). Thus, if his Laurel County sentences were vacated, the KDOC would no longer have custody of Bowling. See KRS § 532.120(4). This letter explains what would happen in a hypothetical situation that has not occurred, but it does not demonstrate that Bowling received credit on his Rockcastle County sentence.
The evidence showing that Bowling did not actually receive credit on his Rockcas-tle sentence is strong. His Resident Record Card indicates that his entire credit was applied to just one of his Laurel County convictions. Bowling also asks the panel to take judicial notice of two letters, both from the Assistant District Supervisor of the KDOC. The first states that Bowling was given zero days of credit for his Rock-castle sentence, and the second clarifies that because he was sentenced first in Laurel County, his full credit was applied solely to that case. In sum, the record does not support the conclusion that custody credit was ever applied to Bowling’s Rock-castle County sentence.
Because Kentucky law and KDOC policies do not mandate that Bowling receive pre-trial custody credit on his Rockcastle County sentence, and because the evidence does not show that he was ever awarded such credit, he was still “in custody” for federal habeas purposes at the time he filed his petition. Therefore, I respectfully dissent.